IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| FAIRWAY OUTDOOR ADVERTISING, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:21-CV-00867 |
| CITY OF HIGH POINT, | ) ) ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

After its applications for permits to install digital billboards were denied by the defendant City of High Point, the plaintiff Fairway Outdoor Advertising, LLC sued the City, contending that the zoning ordinance regulating outdoor signs is unconstitutional. Fairway alleges no facts to undermine the content-neutral and narrowly-tailored prohibition on billboards outside the heavy industrial district, and Fairway does not have a constitutional right to erect digital billboards wherever it wants. Fairway lacks standing to challenge other provisions of the ordinance. The Court declines to exercise supplemental jurisdiction over the related state law claims. The City's motion to dismiss will be granted.

I.     Background

    **A. The 2017 Zoning Ordinance**

The City regulates outdoor signs, including billboards, primarily through § 5.7 of the City's Development Ordinance. *See* Doc. 13-1 at 82–103. The ordinance regulates

all outdoor signs, including on-site signage and off-site signage. On-site signs are signs that direct attention to something "existing on the same lot where the sign is displayed." *Id.* at 121 (§ 10.4). Off-site signs direct attention to something "existing elsewhere than upon the lot where the sign is displayed." *Id.* The definition of an off-site sign is the same as the definition for an outdoor advertising sign/billboard. *Id.*; Doc. 34 at ¶ 4.[1]

Under the ordinance, some signs are prohibited outright, such as signs affixed to trees, rocks, and bus shelters. Doc. 13-1 at 85 (§ 5.7.6). Others are allowed in certain zoning districts if they meet certain standards, *see id.* at 83–84 (§§ 5.7.4–5.7.5), and a permit is obtained. *Id.* at 88–101 (§§ 5.7.9–5.7.11). Still others must meet certain standards, but no permit is required, such as warning signs and temporary real estate signs. *Id.* at 86–88 (§ 5.7.8). Finally, some signs are exempt from the requirements in the ordinance, such as government signs and certain flags. *Id.* at 85–86 (§ 5.7.7); *see* Doc. 34 at ¶ 7. Billboards did not qualify for an exemption. Doc. 34 at ¶ 7.

All outdoor advertising signs such as the billboards Fairway wants to install here require a permit, *see* Doc. 13-1 at 100–01 (§ 5.7.11), and new billboards are limited to the "heavy industrial" zoning district. *Id.* at 100 (§ 5.7.11(A)); *id.* at 70 (§ 3.4.12). Even within that district, billboards are prohibited if they are within a specified distance of a residential district, a religious institution, or other billboards. *Id.* at 101 (§ 5.7.11(E)). The ordinance allowed existing billboards not in compliance with these requirements to remain in place but prohibited replacement. *Id.* at 104 (§§ 8.5.4, 8.5.5(A)).

---

[1] The Court will generally use the shorthand term "billboard" for ease of reading.

2

The zoning ordinance allowed digital signage in some districts, but not in the heavy industrial district. *Id.* at 93 (§ 5.7.9(B)(3)(g)(1)(i), (iii)); *id.* at 85 (§ 5.7.6(D)). Because billboards are only authorized in the heavy industrial district, Doc. 13-1 at 100 (§ 5.7.11(A)), this in effect banned digital billboards in the City. *See* Doc. 34 ¶ 6.

### B. Overview of the Facts Alleged in the Complaint

Fairway is a limited liability company in the billboard business. Doc. 1 at ¶ 11. As of the filing of the complaint, Fairway had approximately 68 "billboard faces" on leased property within the City's zoning jurisdiction. *Id.* at ¶ 26.

In 2017, Fairway submitted nine applications for billboard permits to the City. *Id.* at ¶ 81. Fairway withdrew one application and lost the lease for the other, so only seven applications are at issue here. *Id.* In the applications, Fairway sought permission to erect six new billboards employing digital technology and to replace one existing vinyl billboard with a billboard with a digital face. *Id.* None of the billboards were in the heavy industrial district. *See id.* at ¶ 82.

For some time, traditional billboards have used computer-generated images printed on reflective vinyl. *Id.* at ¶¶ 49, 53. A crew of people must physically change the copy. *Id.* at ¶ 60. More recently, technology innovations have allowed digital billboards, which use thousands of LEDs and electrical currents to display messages that can be quickly and remotely changed. *Id.* at ¶¶ 49, 53–54, 59.

Applying the ordinance then in effect, the City denied the permits because all seven billboards were outside the heavy industrial district. Doc. 1-5 at 2–3. The City also denied the permits for two of the requested billboards because they were too close to

3

a residential district or religious institution. *Id.* at 3. Lastly, the City denied one of the permits because Fairway sought to replace an existing nonconforming vinyl billboard with a digital billboard. *Id.*

### C. Overview of Claims and the Pending Motion

Fairway contends the zoning ordinance as to billboards is unconstitutional, both as-applied and facially, under the First Amendment and various other federal and state constitutional provisions. It also challenges the ordinances as inconsistent with state zoning statutes. The City moves to dismiss some of Fairway's claims for lack of standing. Doc. 21. For the rest, the City contends that it is entitled to judgment on the pleadings. *Id.*

## II. The On-Site/Off-Site Distinction

Under the ordinance, on-site signs are authorized throughout the City if they meet certain standards. *See* Doc. 13-1 at 88–96 (§ 5.7.9). Off-site advertising signs like billboards are authorized only in the heavy industrial district. *Id.* at 100 (§ 5.7.11(A)). As it made clear in the hearing on November 30, 2022, Fairway first challenges the constitutionality of the ordinance's distinctions between on-site and off-site signs, which limit billboards to the heavy industrial district. *See* Doc. 1 at ¶¶ 28–33, ¶¶ 189–95. Fairway also challenges the definitions of on-site and off-site signs. *See id.* at ¶¶ 109, 124–25, 127.

### A. Standing

The City acknowledges that Fairway has standing to challenge the on-site/off-site distinction in the ordinance. *See* Doc. 22 at 2. The City denied Fairway's permit

4

applications in part under the ordinance governing off-site signs, thus causing a concrete injury that is fairly traceable to the City. *See* Doc. 1-5 at 2–3 (citing §§ 5.7.11, 8.5.5). And there is a likelihood of redressability if the Court finds that this distinction is unconstitutional.

## B. The Relevant Definitions

The Supreme Court recently held that distinctions between on-site signs and off-site signs like billboards are facially content neutral, so long as the sign's "substantive message itself is irrelevant to the application of the provisions." *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 142 S. Ct. 1464, 1472 (2022). "[A]bsent a content-based purpose or justification," a zoning distinction between on-site and off-site signage "is content neutral and does not warrant the application of strict scrutiny." *Id.* at 1471.

### 1. Location

In the first instance, the ordinance distinguishes between on-site signs and off-site signs based on location. Both are signs "which direct[] attention to a business, commodity, service, entertainment, or attraction," distinguishing only as to where the item is "sold, offered, or existing." Doc. 13-1 at 121 (§ 10.4); Doc. 34 at ¶¶ 4–5. For on-site signs, the item must be "sold, offered or existing on the same lot where the sign is displayed," whereas for off-site signs, the item must be "sold, offered, or existing elsewhere than the lot where the sign is displayed." Doc. 13-1 at 121 (§ 10.4); Doc. 34 at ¶¶ 4–5. This distinction is content-neutral, as the only difference is location.

The determination that the on-site/off-site distinction is facially content-neutral "does not end the First Amendment inquiry," *City of Austin*, 142 S. Ct. at 1475, but the

5

distinction is constitutional if it is "narrowly tailored to serve a significant governmental interest," *id.* (cleaned up), and "leave[s] open ample alternative channels for communication of the information." *Billups v. City of Charleston*, 961 F.3d 673, 685 (4th Cir. 2020) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)).[2] The complaint alleges no facts that plausibly show a violation under this level of scrutiny.

Cities have well-established governmental interests in traffic safety and aesthetics that are implicated by billboards. *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 509 (1981) (plurality opinion) (noting billboards are "real and substantial hazards to traffic safety"); *id.* at 510 (recognizing that "billboards by their very nature . . . can be perceived as an 'esthetic harm'"); *see also Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 893–94 (9th Cir. 2007); *Covenant Media of N.C., L.L.C. v. City of Monroe*, 285 F. App'x 30, 35 (4th Cir. 2008) (unpublished) (collecting cases). Here, the City enacted the ordinance regulating signs, including billboards, for traffic safety and aesthetic purposes. Doc. 13-1 at 82 (§ 5.7.1). Settled authority recognizes that these are significant government interests.

Fairway alleges that evidence presented to the City shows that digital billboards are not a traffic hazard. Doc. 1 at ¶ 79. But a legislative judgment that billboards are

---

[2] Strict scrutiny could still apply in some situations. "If there is evidence that an impermissible purpose or justification underpins a facially content-neutral restriction, for instance, that restriction may be content based." *City of Austin*, 142 S. Ct. at 1475; *see also Reed v. Town of Gilbert*, 576 U.S. 155, 164 (2015). But Fairway has not alleged any impermissible purpose or impermissible justification beyond its arguments that the City's traffic safety and aesthetic interests, discussed *infra*, are inadequate justifications.

traffic hazards, which the Supreme Court has characterized as a "common-sense judgment[]" made by many local lawmakers and courts for decades, is not manifestly unreasonable. *Metromedia*, 453 U.S. at 509.

Fairway alleges that "there has been no study or support presented" to the City that digital billboards "have a detrimental impact on aesthetics in any manner different than the large volume of signs" otherwise allowed under the ordinance. Doc. 1 at ¶ 80. The Supreme Court has rejected this argument. *Metromedia*, 453 U.S. at 510–512 ("[T]he city could reasonably conclude that a commercial enterprise—as well as the interested public—has a stronger interest in identifying its place of business and advertising the products or services available there than it has in using or leasing its available space for the purpose of advertising commercial enterprises located elsewhere.").

The statute is also narrowly tailored. To further its aesthetic interests, the City has limited off-site advertising signs—i.e., billboards—to the heavy industrial district, where aesthetics are less important than in other locations. *Compare, e.g.*, Doc. 13-1 at 70 (§ 3.4.12) (noting that the heavy industrial district accommodates uses that have "greater potential for adverse environmental and visual impacts"), *with id.* at 67 (§ 3.4.11) (noting that uses in the light industrial district "have minimal visual impacts"), *and id.* at 61 (§ 3.4.10) (noting the "expectation for high quality design" in the employment center district). The same is true for the City's traffic control interests, with different districts having different kinds of traffic-control needs. *Compare, e.g.*, *id.* at 70 (§ 3.4.12) (noting the "extensive exterior movement of vehicles, materials, and goods" in the heavy industrial district), *with id.* at 54 (§ 3.4.8) (noting the "pedestrian-oriented environment"

7

of the central business district), *and id.* at 51 (§ 3.4.7) (noting the importance of "visibility" at major intersections in the retail center district).

The final prong asks whether the ordinance "leaves open ample alternative channels for communication of the information." *Ross v. Early*, 746 F.3d 546, 559 (4th Cir. 2014) (cleaned up). "[T]o satisfy this standard, the available alternatives need not be the speaker's first or best choice or provide the same audience or impact for the speech." *Id.* (cleaned up). Instead, "the relevant inquiry is simply whether the challenged regulation provides avenues for the more general dissemination of a message." *Id.* (cleaned up).

The restriction here leaves open alternative channels of communication because Fairway's existing nonconforming billboards can remain standing, and it can erect new non-digital billboards in the heavy industrial district. *See Get Outdoors II*, 506 F.3d at 894 (noting that an ordinance left open alternative channels of communication where it "stop[ped] short of banning all billboards"); *see also Covenant Media of N.C.*, 285 F. App'x at 35–36 (noting same). On-site signs, including on-site digital signs, are also widely available for communication of the same information, in places with a closer and arguably more meaningful geographic connection to the information offered.[3]

---

[3] Fairway contends that digital billboards are the only way to display "Amber Alerts and other time-sensitive emergency messages . . . at a moment's notice." Doc. 1 at ¶ 68. But Fairway does not propose to limit its messages to such emergency messages; instead, it wants to put up billboards throughout the City that convey all kinds of messages, causing exactly those problems the ordinance is designed to prevent. Moreover, this argument overlooks the fact, alleged in the complaint, that digital off-site signs erected by the City and other governmental entities are allowed outside the heavy industrial zone, *id.* at ¶ 117, and are well-suited for Amber Alerts and other emergency messages.

8

Digital advertising billboards might be an effective way to display messages, but the test is not about the "efficacy of a single medium of expression." *Ross*, 746 F.3d at 559. And the "First Amendment affords no special protection to a speaker's favored or most cost-effective mode of communication." *Id.* (cleaned up); *see also City of Austin*, 142 S. Ct. at 1479 (Breyer, J., concurring) ("Perhaps digitization would enable them to make more effective use of their billboard space. But their inability to maximize the use of their space in this way is unlikely to meaningfully interfere with their participation in the 'marketplace of ideas.'").

The content-neutral distinction between on-site and off-site signs withstands intermediate scrutiny. The motion for judgment on the pleadings will be granted.

### 2. Noncommercial messages

While the City's on-site/off-site location distinction survives intermediate scrutiny viewed in isolation, the two definitions contain another potential distinction. The definition of an on-site sign explicitly provides that "an on-site sign may also display a noncommercial message." Doc. 13-1 at 121 (§ 10.4). The definition of off-site signs and the identical definition of outdoor advertising signs/billboards do not contain this allowance. *See id.*[4]

---

[4] The ordinance does not define the phrase "noncommercial message." Doc. 1 at ¶ 151; *see also* Doc. 13-1 at 105–28 (§ 10.4) (lacking definition for "noncommercial message"). A commercial message is a "sign wording, logo, or other representation that, directly or indirectly, names, advertises, or calls attention to a business, product, service, or other commercial activity." Doc. 13-1 at 109 (§ 10.4). In its briefing, the City reasonably asserts that "the ordinance clearly defines 'commercial' message, and as a matter of common sense, a 'noncommercial' message is simply a message that is *not commercial*." Doc. 22 at 20. Fairway does not contend otherwise.

9

Fairway contends that this distinction prohibits noncommercial speech on billboards and that the different treatment violates the First Amendment as a content-based regulation on speech. *See* Doc. 1 at ¶¶ 109, 124–25, 127; Doc. 29 at 12 (alleging noncommercial messaging is not allowed on billboards); *id.* at 18 (alleging the City favors signs displaying commercial speech); *id.* at 19–20 (same). The City disputes this interpretation and says that billboards are permitted to convey noncommercial speech. Doc. 30 at 5. That seems logical, as an explicit grant of permission in one part of an ordinance does not equate to a prohibition in another part of the ordinance.

The Court need not resolve this, however, since Fairway lacks standing to raise this argument. Nowhere in the complaint does it allege that it has been denied a permit for a billboard because the billboard would convey noncommercial speech. When challenging a sign ordinance, "a plaintiff must establish that [it] has standing to challenge each provision of an ordinance by showing that [it] was injured by application of those provisions." *Covenant Media of S.C., LLC v. City of N. Charleston*, 493 F.3d 421, 430 (4th Cir. 2007) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230 (1990)). Here, a finding that the ordinance unconstitutionally prohibits noncommercial speech on billboards would not redress Fairway's alleged injury; the on-site/off-site distinction limiting all billboards to the heavy industrial zone would still be in place and would still result in denial of Fairway's permit applications to erect billboards outside the heavy industrial district.

Indeed, the constitutionality of the on-site/off-site distinction that limits billboards to the heavy industrial zone "defeats standing on [Fairway's] remaining as-applied

10

claims." *Covenant Media of N.C.*, 285 F. App'x at 36. In each application, Fairway sought to erect a billboard outside the heavy industrial zone. *See* Doc. 1-5 at 2–3. And since the City denied Fairway's permits by applying a constitutional restriction limiting billboards to that zone, Fairway's remaining as-applied claims are not redressable by a favorable decision. They will be dismissed for lack of standing.

### III. Fairway's Facial Challenges

Fairway also makes a broader facial challenge to the ordinance, contending that the outright ban on digital billboards is a constitutional violation. It spends a good chunk of the complaint and the briefing describing the reasons digital billboards are a good thing, but it cites no real authority for the implicit subtext of its argument: that it has a constitutional right to put digital billboards wherever it wants. That is not the law.

Fairway first contends that digital billboards are a "unique medium of communication" and that the City's ban is an "overinclusive regulation." Doc. 29 at 19 (cleaned up). In support, Fairway cites *City of Ladue v. Gilleo*, 512 U.S. 43 (1994). *City of Ladue* involved an ordinance that, subject to a few exceptions, prohibited homeowners from displaying signs on their homes. 512 U.S. at 45. The Supreme Court expressed concerns about this regulation because it applied to residential signs which "provide information about the identity of the 'speaker,'" "are an unusually cheap and convenient form of communication," and "may have no practical substitute." *Id.* at 56–57. The Court held that the ordinance was unconstitutional because it "foreclosed a venerable means of communication" and "suppress[ed] too much speech," even though the ordinance was content-neutral. *Id.* at 54–55, 58–59.

11

This case is distinguishable from *City of Ladue*. First, bans on digital billboards do not raise the same concerns as bans on residential signs. Billboards do not provide information about a speaker's identity in the same way as a sign on residential property, nor are they unusually cheap. And it is well established that cities can completely ban billboards for aesthetic and safety concerns. *See Covenant Media of N.C., LLC v. City of Monroe*, 285 F. App'x 30, 35 (4th Cir. 2008) (unpublished) (collecting cases); *Ga. Outdoor Advert., Inc. v. City of Waynesville*, 833 F.2d 43, 45–46 (4th Cir. 1987). If the City can ban all billboards, it is difficult to see why it cannot ban only digital billboards, which raise serious traffic safety and aesthetic concerns with their explicitly-alleged links to the use of distracting mobile devices, Doc. 1 at ¶ 56 (alleging that the outdoor advertising "industry is using digital technology to connect to consumers' mobile devices for real-time reactions to . . . messaging"), and their quickly-changing messages. *Id.* at ¶ 54 (alleging that the message could change as often as every eight seconds).

Fairway also contends that the limitation of billboards to the heavy industrial area is unconstitutional because that is "not where the audience is located for billboard clients." Doc. 29 at 18; *see also* Doc. 1 at ¶¶ 65–66. But it points to no case establishing the proposition that its desire to sell digital billboards outweighs legitimate governmental interests in traffic control and aesthetics. *See* discussion *supra* pages 6–8. Also, the First Amendment does not require that the City provide Fairway with the best "audience or impact for [its] speech." *Ross v. Early*, 746 F.3d 546, 559 (4th Cir. 2014) (discussing "ample alternative channels for communication" prong).

Fairway says that the City discriminates based on content of signs. *See* Doc. 1 at ¶ 101 (repeating definition of "sign"); *id.* at ¶ 103 (repeating the definition of a "Construction Sign"); *id* at ¶ 104 (repeating the definition of a "Governmental Sign"); *id.* at ¶¶ 105–06 (alleging definitions of "Identification Sign" and "Instructional Sign" are content-based). But these examples have nothing to do with Fairway, whose digital billboards are prohibited for reasons other than the content of the signs.

Fairway contends that the ordinance exempted a number of signs from permitting requirements and excluded others from regulation altogether based on the content of the signs. Doc. 29 at 19; Doc. 1 at ¶¶ 37, 116–21, 124–25. While some of the exemptions may raise concerns that the City "dr[ew] distinctions based on the message a speaker conveys," *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015), none of the exempted or "favored" signs are billboards or off-site signs. *See* Doc. 34 at ¶ 7 (stipulating that billboards did not qualify for an exemption). All billboards are treated alike under the ordinance. Fairway does not have standing to challenge these sections of the ordinance because it has not shown how these provisions caused it any injury.

Fairway alleges that the City violates its constitutional rights because it allows "hundreds of on-premise signs" which have the same "tangible secondary effects" of billboards. Doc. 1 at ¶ 37. But the Supreme Court long ago rejected this argument.

> It does not follow from the fact that the city has concluded that some commercial interests outweigh its municipal interests in this context that it must give similar weight to all other commercial advertising. Thus, offsite commercial billboards may be prohibited while onsite commercial billboards are permitted.

*Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 512 (1981) (plurality opinion).

Fairway asserts facial challenges under equal protection and substantive due process. Doc. 1 at ¶¶ 173–181. But Fairway concedes that its substantive due process claim "is ultimately subsumed by its First Amendment claims" and that its equal protection claim is "fused" with its First Amendment claims. Doc. 29 at 24–25; *see R.A.V. v. City of St. Paul*, 505 U.S. 377, 384 n.4 (1992) (noting the Supreme Court "has occasionally fused the First Amendment into the Equal Protection Clause"). Since its First Amendment claims will be dismissed, these claims will also be dismissed.

Finally, many of Fairway's kitchen-sink allegations do not have any clear connection or relation to Fairway's situation. Fairway does not have standing to challenge those parts of the ordinance which have no possible application to its request for permits for these digital billboards outside the heavy industrial area. For example, the fact that a car wash might not be able to put up certain signs on-site, *see* Doc. 29 at 20 n.5, has nothing to do with Fairway, which only wants to install off-site billboards. Similarly, its vagueness and overbreadth complaints about the "minimum adverse effects" language in the ordinance, Doc. 1 at ¶ 152, have nothing to do with why the City denied the permits at issue.

## IV. Prior Restraint

Fairway challenges various provisions of the 2017 ordinance as a prior restraint. Doc. 1 at ¶¶ 159–72. The Supreme Court has "long held that when a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." *City of Lakewood v.*

14

*Plain Dealer Publ'g Co.*, 486 U.S. 750, 755–56 (1988). The injury is the "prospect of self censorship." *Covenant Media of N.C., L.L.C. v. City of Monroe*, 285 F. App'x 30, 36 (4th Cir. 2008) (citing *City of Lakewood*, 486 U.S. at 757). But a plaintiff lacks standing to bring such a claim when there is no prospect of self-censorship and thus no "threat of prior restraint." *Covenant Media of N.C.*, 285 F. App'x at 37.

Here, Fairway does not allege that the City intimidated it into censoring its speech. "No change in the permit procedures would result in the approval of" its applications to erect digital billboards outside the heavy industrial district, and Fairway does not suggest that it "intend[s] to file future applications that would comply with the [ordinance] or that [it is] fearful to submit such an application." *Id.* at 37; *see also Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 895 (9th Cir. 2007). Fairway's prior restraint claim will be dismissed for lack of standing.

## V.  The 2019 Amendment

In February 2019, the City amended its sign ordinance. *See* Doc. 13-2. The complaint at various times challenges both the 2017 ordinance and the 2019 amendment. *See* Doc. 1 at ¶¶ 97, 143, 145–46, 148, 185–86, 201. Fairway did not resubmit its applications under the 2019 amendment. *See id.* at ¶¶ 81, 94 (alleging permit denials only under the 2017 ordinance).

Fairway cannot show it "was injured by application of" the 2019 amendment since it never resubmitted its applications under the amended ordinance. *See Covenant Media of S.C., LLC v. City of N. Charleston*, 493 F.3d 421, 430 (4th Cir. 2007). And in any event, Fairway conceded at oral argument that it has no different arguments about the

15

2019 ordinance as amended. To the extent Fairway alleges claims under the 2019 amendment, those claims will be dismissed.

## VI. State Law Claims

In addition to its federal claims, Fairway asserted state law claims and state constitutional claims. Fairway alleges the Court has diversity jurisdiction over these claims. Doc. 1 at ¶ 16. But Fairway is a limited liability company, and it has not alleged the citizenship of each of its members. *Id.* at ¶ 11; *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (noting "the citizenship of a limited liability company . . . is determined by the citizenship of all its members").

Under 28 U.S.C. § 1367(a), a district court has "supplemental jurisdiction over all other claims that are so related to claims" over which the court has original jurisdiction if the claims "form part of the same case or controversy." "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

"[T]rial courts enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995); *see also Campbell-McCormick, Inc. v. Oliver*, 874 F.3d 390, 398 (4th Cir. 2017). And when a federal court declines to exercise supplemental jurisdiction, it has the "inherent power to dismiss the case . . . provided the conditions set forth in § 1367(c) for declining to exercise supplemental jurisdiction have been met." *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001).

16

Since Fairway's federal claims will be dismissed and the only basis for jurisdiction over Fairway's state law claims is supplemental jurisdiction, the Court will decline to exercise supplemental jurisdiction over the related state law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Hinson*, 239 F.3d at 618 (finding no abuse of discretion in remand to state court "after the federal claim had dropped from the case"); *Safar v. Tingle*, 859 F.3d 241, 251 (4th Cir. 2017) (instructing "the district court on remand to dismiss the state law claims without prejudice" because "all federal claims [were] found wanting"); *Greer v. Trinity Fin. Servs., LLC*, __ F. Supp. 3d __, 2022 WL 2133907, at *6 (D. Md. June 14, 2022) (noting judicial economy "favor[s] a halt in supplemental jurisdiction over a case in which federal law has no role"). The claims will be dismissed without prejudice.

## VII. Conclusion

Although Fairway takes an everything-but-the-kitchen-sink approach and brings various types of claims, the contention behind each claim is the same: Fairway believes it has a constitutional right to erect digital billboards throughout the City of High Point. But the City's prohibition of off-site advertising signs outside the heavy industrial district is a narrowly-tailored, content-neutral restriction designed to protect significant governmental interests, and it is the City's role, not this Court's role, to weigh the policy arguments Fairway promotes. Because the City's on-site/off-site restriction is constitutional, Fairway does not have standing to raise its other claims. Its state law claims will be dismissed without prejudice.

It is **ORDERED** that the City's motion to dismiss for lack of standing and motion for judgment on the pleadings, Doc. 21, is **GRANTED**. Fairway's federal constitutional claims will be dismissed with prejudice, and its state statutory and constitutional claims will be dismissed without prejudice. Judgment will be entered separately.

This the 28th day of December, 2022.

_____
UNITED STATES DISTRICT JUDGE